## MARTIN *vs.* THE STATE.

[INDICTMENT FOR MURDER.]

1. *General charge of court; requisites of.*—The charge of the court should always be not only a correct exposition of the law governing the issue, but it should also be applicable to the whole evidence, when it is a general charge.
2. *Same; when erroneous.*—When a general charge of the court, in a criminal prosecution, may be divided into two propositions not naturally connected, if either proposition, when so separated, is not applicable to the evidence, such charge is erroneous.
3. *Same; what will not cure error in.*—A qualification appended to the second proposition of such a charge will not be applied to the first, in order to remove the objection of too great generality, when it is only true without the limitations suggested by the evidence.
4. *Charge to jury in criminal case; what erroneous.*—A charge, that if the jury believe "from the evidence that the defendant killed the deceased by shooting him with a pistol, the law presumes it was done with malice," when the evidence tended to show that the pistol was resorted to in self-defense, is erroneous. It is too broad, and ignores all the evidence of self-defense.

APPEAL from the Circuit Court of Lauderdale.
Tried before Hon. JAMES S. CLARK.

Appellant, Martin, was indicted in the circuit court of Franklin for the murder of John W. Norman. The venue was changed to Lauderdale county, where appellant was

tried, found guilty of manslaughter in the first degree, and sentenced to five years imprisonment in the penitentiary.

From the bill of exceptions, it appears that Martin and Norman were neighbors, and that the difficulty commenced about the right, claimed by both, to gather peaches from trees on a vacant lot near Norman's house. The evidence establishes that Martin sent his servant to gather peaches from these trees, and tended to show that deceased, after some words had passed between the servant and deceased's wife, ordered the servant away, who obeyed, but shortly afterwards returned with Martin. There was testimony in behalf of the defense, that deceased remarked about this time that "he would kill him (Martin) before he should get the peaches; that Norman had an open knife in his right hand, and at the time caught Martin by the shirt collar, with his knife in his right hand, and that after this defendant shot deceased." There was some testimony introduced by defendant going to show that the pistol was fired so close to deceased that powder was driven into the wounds.

The testimony on behalf of the State tended to show that Norman greeted Martin in a friendly manner when Martin came, asking "if that was the way for one neighbor to treat another;" that deceased did not draw his knife until after he was shot; that at the time, his hands were down by his side; that Martin ran towards deceased, and then shot him. The dying declaration of deceased was, "that he did nothing to Martin to cause him to shoot; that when he saw Martin draw the pistol, and about to shoot him, he jumped at it to catch it, but it was too late." The evidence in behalf of the State tended to show that there were no powder marks upon the wound.

There were several witnesses examined both on behalf of the State and the defendant. Some of the witnesses, both for the State and for the defense, were contradicted as to material statements and attempted to be impeached. There were several exceptions reserved to rulings of the court, which need not be further noticed.

The evidence being substantially as above stated, the

court, at the written request of the solicitor, gave the following charge : "If the jury believe from the evidence that the defendant killed deceased by shooting him with a pistol, the law presumes it was done with malice, and the *onus* of showing excuse, mitigation or· justification rests on the defendant, and unless he has shown such mitigation, excuse or justification by *a* [the] evidence, he is ˙guilty as charged in this indictment."

The general charge of the court is not set out in the bill of exceptions, nor does it show that any other charge than the one given was asked by either .party.

The defendant excepted to the giving of this charge, and it is the chief and only error assigned which need be further noticed.

WM. COOPER, and E. A. O'NEAL, for appellant.—"Malice *vel non*" was a question dependent on all of the proof, not on selected parts of it, and it matters not who showed the excuse—whether it came out from the State's evidence, or from the proof by defendant of "*a* evidence," or from defendant at all.—See *Ogletree v. The State*, 28 Ala. 693, 702, where this court ruled that "a charge which selects a portion of the facts proven, and instructs the jury that if these facts are proved, then the law presumes malice, and that defendant intended to kill, is error, because it shifts the burthen of proof, and loses sight of the distinction between civil and criminal cases as to the measure of proof." The court goes on to say in that case, "Nor is such error cured by a further charge of the court, that such presumptions only arise in the absence of evidence tending to qualify or explain the selected facts, and may be rebutted and explained away by evidence, so that if they find the facts on which these presumptions arise in law, with other evidence tending to qualify or explain them, it will then be their duty to consider all the evidence in connection, and if upon the whole evidence, they entertain a reasonable doubt, they should acquit the defendant."

Thus, a hypothetical charge, on a selected or any isolated

statement of part only of the proof, was repudiated and discarded by this court as being contrary to law.

In Martin's case, the court did a greater wrong by charging, on the point of legal presumption of malice, as above, that if defendant did not, by "*a* evidence," explain it away, he was guilty in manner and form as charged in the indictment; that is, that Martin was guilty of the murder of John W. Norman in the first degree. The extravagance of such a charge was so observed and apparent, that the jury on their oaths discarded it, and showed the great advantage of a trial by twelve men over a trial by one.

The charge was erroneous—1st, because it was a hypothetical charge on a selected portion of the evidence against the defendant; 2d, the hypothetical charge was not on all the evidence; 3d, it was a shifting of the burthen of proof from the State to the shoulders of defendant, which is expressly ignored in Ogletree's case, and that case is cited as law and reaffirmed by this court in *Moorer v. The State*, 44 Ala. 15.

In 3 Yerger (Tenn.) 283, 287, CATRON, J., ruled, and put the question, "Suppose the jury should, on a charge of legal implication of malice, find a special verdict that the defendant killed deceased with a gun, in manner and form as charged in the indictment, but as to the malice they are not satisfied: could the court go on to pronounce sentence on the defendant upon the legal implication of malice, which the court charged the jury was the law?" Surely not; and yet such would seem to be the inexorable legal logic, if such charge was correct. Then, is not a charge wrong which the court can not pass judgment upon when the jury turns back upon the court by special verdict?

Every material fact must be proved by the State. This is now universal law, and needs not a further citation. *Ogletree v. The State, supra.* In 24 Pick. 366, 373, the court charged that, the State having proved a *prima facie* case, it was incumbent on defendant to restore himself by proof of presumptive innocence. That case was reversed, and the higher court decided that the State must make

out its entire case. And that, too, was only a retailing case. How much more needful is such ruling when life and liberty are at stake!

In Martin's case the charge was asked in writing, and at the foot of the charge requested was a citation to the case of *The People v. Schroder*, 1 Amer. Rep. 480, where it is decided that "if the evidence adduced by the State tends to show the homicide was excusable, the prisoner has the right to avail himself of such circumstances in his defense, and thus defend without on his part calling in or introducing evidence of excuse or justification;" thus reversing the charge which has been given below, that defendant should prove circumstances of excuse, &c.

That was exactly the error committed in Martin's case, only that our court below was more emphatic in its error, by charging that Martin must excuse himself from the implication of malice which the law raised from the killing with a pistol, and that Martin must so explain by "the evidence." And thus it is clear from the case of *The People v. Schroder*, that the case is with defendant Martin, and that the charge below was erroneous.

In *Murphy v. The State*, 37 Ala., relied on by the State, the court charged the jury to look to all the evidence as touching the killing; this, too, before they could imply malice from a want of circumstances of excuse or justification. Not so in Martin's case; for there the court charged the jury that the mere fact of killing with a pistol was in law proof of malice, and unless Martin removed this implication by evidence, he was guilty as charged in the indictment; that is, of murder in the first degree,—thus cutting Martin off from all justification shown by the evidence. In Murphy's case, the court charged the jury to look to all the evidence; in Martin's case, the court selects the fact of killing with a pistol, and hypothetically charges on that, and that alone, cutting Martin off from all the facts. The great wonder is, that under the charge the jury did not find Martin guilty of murder, and deprive him of

all the facts so fully proved in mitigation. Verily, the trial by jury is a bulwark of defense!

It is remarkable that this bloody charge was given low, in the face of all the extenuating circumstances of the evidence as shown by the bill of exceptions. And yet, such was the charge given as to ignore all these circumstances, and in fact to be abstract, and not conformable to the evidence, as shown by the bill of exceptions. In *Lyon & Co. v. Kent, Payne & Co.,* 46 Ala., this court refused to give a charge that did not conform to all the testimony, because it was select and abstract.

JOHN W. A. SANFORD, Attorney-General, and J. B MOORE, *contra.*—In Roscoe's Criminal Evidence, the law is thus stated: " In every charge of murder, says Mr. Justice FOSTER, the fact of killing being first proved, all the circumstances of accident, necessity, or infirmity, are to be satisfactorily proved by the prisoner, unless they arise out of the evidence produced against him, for the law presumes the fact to be founded in malice until the contrary appears."—Roscoe's Cr. Ev. marg. p. 21, citing Foster, 255 ; 1 Hale P. C. 455 ; 1 East. P. C. 340 ; Wharton's Cr. Law, 265–6.

In *Murphy v. The State,* (37 Ala. 144,) the court below, amongst other things, charged: " So regardful is our law of human life, that whenever it is proved that one person has taken the life of another, the law presumes it was done with malice, and imposes on the slayer the *onus* of rebutting this presumption, unless the evidence which proves the killing itself shows it to have been done without malice." This charge was decided by our supreme court to be correct.—See 37 Ala. 144; *Olney v. State,* 18 Ala. 601 ; 2 Greenl. 594.

If the most stringent criticism was applied to the charge given in this case, now before the court, it could only have required that the court should have added to the charge given the words, " unless the evidence adduced by the State shows such excuse, mitigation or justification."

37

Would such addition have been proper when construed with reference to the evidence adduced by the State, as shown by the bill of exceptions? We say it would not. There was not a single mitigating circumstance shown by the State's evidence—not one. Why, then, could it be required to charge with reference to a fact about which there was not a particle of evidence arising out of the State's evidence? Such an addition to the charge would have been abstract, and calculated to mislead the jury. That such is the law, and that a charge has to be considered with reference to the facts set out in the bill of exceptions, is clearly settled in *Harrison v. The State*, (24 Ala. 70.)

That the court properly charged, on the State's evidence, "as a matter of law," in the absence of a single mitigating circumstance in the State's evidence, so as to show upon whom the *onus* then settled, see *Nat Gray v. State*, 43 Ala. 51; Roscoe's Cr. Ev. 21; Wharton's Cr. Law, *supra*.

That the *onus* of proof is on the defendant to show excuse, mitigation or justification, after the killing is proved, particularly with a deadly weapon, has very recently been decided in the States, see *State v. Lawrence*, 57 Maine, 574; *People v. Scryner*, 42 N. Y. 1; Law Review, April, 1871, p. 483; see, also, *State v. Murphy*, 37 Ala. 144.

PETERS, J.—This is a prosecution by indictment for murder, found at the fall term of the circuit court of Franklin county, in the year 1869.

The principal question in the case arises upon the charge of the court to the jury on the trial below. The correctness or incorrectness of this charge depends upon the evidence offered in the circuit court. It is now well settled, that the charge, in such a case, must not only be a correct enunciation of the law governing the issue, but it must also be correct when applied to the whole evidence delivered on the trial. That is, the charge in any of its expositions of the law must not ignore any portion of the testimony, if it is a general charge.—*Ogletree v. The State*, 28 Ala. 693. This court places itself in the position of the court below at the trial. And where there is conflict in the evidence

as there is here, it does not look to its force or its weakness on either side, or to its truth, or the want of it. These considerations are for the jury alone.

In this case there is some testimony tending to show that the accused had killed the deceased in a violent and angry rencounter between them, in which the accused used his pistol, and the deceased attempted to use his knife, in a fatal manner, but that the pistol was used in self-defense. Upon this evidence, the court below charged the jury, upon the motion of the prosecution, as follows:

" If the jury believe, from the evidence, that the defendant killed the deceased by shooting him with a pistol, the law presumes it was done with malice, and the *onus* of shewing excuse, mitigation, or justification, rests on the defendant, and unless he has shown such mitigation, excuse or justification by the evidence, he is guilty as charged in the indictment."

This charge divides itself into two propositions, not necessarily connected. The first proposition is, that a homicide effected by shooting with a pistol is, in law, to be presumed to have been done with malice, in any case whatever. The second proposition is, that, in a criminal prosecution, the *onus* of showing excuse, mitigation or justification rests upon the defendant. The latter proposition is true in all cases, whatever may be the state of the proofs, if there is any evidence showing guilt.—3 Greenl. Ev. § 14. But the first proposition is only true where there is no excuse or justification shown, or where there is no evidence offered on the trial tending to show such excuse or justification.—*Oliver v. The State,* 17 Ala. 694. If, however, there is proof tending to show that the pistol was used in the necessary defense of the life or limb of the defendant, then this presumption of law is suspended. The use of the pistol or any other weapon in self-defense is not evidence of malice; because there can be no malice in self-defense.—17 Ala. 587, *supra.* A presumption of law is conclusive, if not rebutted by other evidence; and where there is any rebutting proof, the court ought so to charge as to recognize its effect. Here there was such evidence,

and the court should have instructed the jury that the use of the pistol was a sufficient ground for a presumption of malice, unless it appeared from the evidence that it had not been used in self-defense. The charge would then have been free from error in both its propositions.—Stark. Ev. pp. 666, 667, 8th Amer. ed. by Sharswood, 1860. The qualification appended to the second proposition of the charge logically and naturally applies to that portion of the charge only. Its separation from the other shows that it was not intended to be referred to it, and without it the exposition contained in the first proposition of the instructions is not free from error, under the facts of this case. The impropriety, or, rather, doubtful fairness, of such a charge is strongly put by CATRON, Chief-Justice of the Supreme Court of Tennessee, in the case of *Coffee v. The State*, (3 Yerg. 283, 287.) "Suppose," says that distinguished jurist,—"suppose they (the jury) had returned a special verdict, and that they found the defendant slew the deceased as laid in the indictment; but of the fact, that he slew him with malice, they were not convinced; could the court lawfully have pronounced judgment of death upon this finding? I think clearly not." Yet this is the exposition of the law deducible from the instructions contained in the charge in this case. Besides the objection above urged, such a charge is obnoxious to the further impeachment of seeming unfairness, against the effects of which the law intends most sedulously to guard the accused, in all prosecutions where life and limb are at stake and in peril.—*Ex parte Chase*, 43 Ala. 303; *Hampton v. The State*, 45 Ala. 82.

The judgment of the court below is reversed, and the cause is remanded for a new trial. And, in the meantime, the appellant, said Edwin D. Martin, shall be held to answer the indictment in this case, until discharged by due course of law.—Rev. Code, § 4316.